**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

REACT PRESENTS, INC.,

    Plaintiff,    CASE NO. 16-13288
             HON. DENISE PAGE HOOD

v.

EAGLE THEATER ENTERTAINMENT,
LLC,
BLAIR MCGOWAN,
AMIR DAIZA,
MATTHEW FARRIS

    Defendants.
                /

SFX REACT-OPERATING LLC,

    Plaintiff,    CASE NO. 16-13311
             HON. DENISE PAGE HOOD

v.

EAGLE THEATER ENTERTAINMENT,
LLC,
BLAIR MCGOWAN,
AMIR DAIZA,
MATTHEW FARRIS

    Defendants.
                /

**ORDER DENYING DEFENDANTS' MOTION FOR SANCTIONS [#26]
AGAINST PLAINTIFF REACT, AND DENYING DEFENDANTS' MOTION
FOR SANCTIONS [#29] AGAINST PLAINTIFF SFX REACT**

## I. BACKGROUND

### A. 16-13288, Procedural Background

On September 12, 2016, Plaintiff React Presents, Inc. ("React") filed a Complaint in the United States District Court for the Eastern District of Michigan against Defendants Eagle Theater Entertainment, LLC ("ETE"), Blair McGowan ("McGowan"), Amir Daiza ("Daiza"), and Matthew Farris ("Farris") (collectively, "Defendants"). The Complaint alleges breach of contract (Count I), fraud (Count II), breach of fiduciary duty (Count III), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV), and unjust enrichment (Count V). (Doc # 1) Defendants filed a Motion for a More Definite Statement on November 21, 2016 (Doc # 5), which was subsequently denied by Magistrate Judge David R. Grand. (Doc # 10) Defendants filed a responsive pleading on February 7, 2017. (Doc # 11) The responsive pleading includes Counterclaims against React, alleging Conspiracy and Agreements in violation of § 1 of the Sherman Act (Count I), violation of the Michigan Antitrust Reform Act ("MARA") (Count II), and unjust enrichment (Count III) (*Id.*). On February 28, 2017, React filed a Motion to Dismiss Defendants Counterclaims. (Doc # 13) The Court dismissed Defendants' unjust enrichment (Count III) claim against React, but denied the Motion on the antitrust and MARA counterclaims. (Doc # 30) Defendants filed an Amended Motion for Judgment on the Pleadings on May 17,

2017. (Doc # 22)  The Court granted Defendants' Motion (Doc #22) as to the unjust enrichment and breach of fiduciary duty claim, and denied the Motion as to the breach of contract claim, fraud claim, and RICO claim. (Doc # 31)  This matter is presently before the Court on Defendants' Motion for Sanctions filed on July 7, 2017. (Doc # 26)  Defendants request the Court dismiss Plaintiff's claims with prejudice as a sanction for Plaintiff's bad faith pre-litigation conduct. (*Id.*)  Plaintiff filed a Response on August 4, 2017. (Doc # 28)  Defendants' Reply was filed on August 31, 2017. (Doc # 33)

### B.  16-13311, Procedural Background

On September 13, 2016, Plaintiff SFX React-Operating LLC ("SFX") filed a Complaint in the United States District Court for the Eastern District of Michigan against Defendants Eagle Theater Entertainment, LLC ("ETE"), Blair McGowan ("McGowan"), Amir Daiza ("Daiza"), and Matthew Farris ("Farris") (collectively, "Defendants").  The Complaint alleges breach of contract (Count I), fraud (Count II), breach of fiduciary duty (Count III), violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count IV), and unjust enrichment (Count V). (Doc # 1)  Defendants filed a Motion for a More Definite Statement on November 21, 2016 (Doc # 6), which was subsequently denied by Magistrate Judge David R. Grand. (Doc # 12)  Defendants filed an Amended Answer on February 7, 2017. (Doc # 16) The Amended Answer includes Counterclaims

against SFX, alleging Conspiracy and Agreements in violation of § 1 of the Sherman Act (Count I), violation of the Michigan Antitrust Reform Act (Count II), and unjust enrichment (Count III) (*Id.*). On February 28, 2017, SFX filed a Motion to Dismiss Defendants' Counterclaims. (Doc # 18) The Court dismissed Defendants' Counterclaims against SFX. (Doc # 33) Defendants filed a Motion for Judgment on the Pleadings on May 17, 2016. (Doc # 25) The Court granted Defendants' Motion (Doc # 25) as to the unjust enrichment and breach of fiduciary duty claim, and denied the Motion as to the breach of contract claim, fraud claim, and RICO claim. (Doc # 31)

This matter is presently before the Court on Defendants' Motion for Sanctions filed on July 7, 2017. (Doc # 29) Defendants request the Court dismiss Plaintiff's claims with prejudice as a sanction for Plaintiff's bad faith pre-litigation conduct. (*Id.*) Plaintiff filed a Response on August 4, 2017. (Doc # 31) Defendants' Reply was filed on August 31, 2017. (Doc # 36)

### C. Factual Background

Plaintiff React was a club, concert, and festival promotion company in the Midwest with its base of operations in Illinois. In 2014, Plaintiff SFX acquired at least some of React's assets. SFX is also in the business of promoting clubs, concerts, and festivals in the Midwest with its base of operations in Illinois.

4

Defendants own and operate several concert venues in the Metro Detroit area including Elektricity, a nightclub in Pontiac, Michigan. Elektricity serves as a concert venue allegedly exclusively for electronic musicians, DJs, and other artists who perform electronic dance music ("EDM"). Defendant McGowan owns Defendant Eagle and is its managing member. Defendant Daiza is responsible for overseeing Eagle's operations and overseeing the bookkeeping. Defendant Farris is Eagle's bookkeeper.

In late 2012, React and Defendants began putting on EDM concerts together at Eagle. At first, React and Eagle allegedly orally agreed to split the profits (or losses) 50-50. React was responsible for negotiating and contracting with artists, advertising, marketing, and promoting the concerts. Eagle was responsible for operating the venue and selling tickets at the box office. In November 2013, the parties memorialized their agreement and practices in a written co-promotion agreement (the "Agreement"). React and ETE co-promoted dozens of concerts in 2013 and 2014 under the terms of the Agreement. According to React, React and Eagle co-promoted approximately 100 concerts from 2012 until React's assets were acquired by SFX in April 2014 under the terms of the Agreement. After each concert, Eagle would provide React with a "settlement" document via e-mail purporting to indicate the profits generated. The Agreement provided the parties complete access to each other's books and records, and the right to inspect, copy,

or conduct audit reviews of the other party's books, for one year following the last performance date of each co-promoted event. (Doc # 1-1, ¶ 22) The settlements were allegedly prepared by Defendant Farris, overseen and approved by Defendant Daiza, and approved by Defendant McGowan. React would review the settlements, and Eagle would send a check to React via the United States mail for React's share of the profits.

In April 2014, SFX and Eagle began co-promoting concerts under the same terms as the prior agreement between React and Eagle. According to SFX, the transition was seamless because SFX was operated by the principals of React. On or around May 1, 2014, SFX and Eagle entered into a written co-promotion agreement, the material terms of which were identical to the agreement between React and Eagle. SFX and Eagle have co-promoted at least 83 EDM concerts from April 2014 through 2016. After each concert, Eagle provides SFX with a settlement document via e-mail purporting to indicate the profits generated. The settlements have been allegedly prepared by Defendant Farris, overseen and approved by Defendant Daiza, and approved by Defendant McGowan. SFX reviews the settlements, and Eagle then sends a check to SFX via the United States mail for SFX's share of the profits.

According to Plaintiff, in January 2016, a disgruntled Eagle employee, Nicholas Doty ("Doty"), provided React and SFX with what Plaintiff alleges to be true and accurate accounting records disclosing that Eagle kept two sets of books showing receipts from the concerts. (Doc # 28-1; Doc # 31-1) Plaintiff alleges that Eagle's settlements systematically and fraudulently underreported the true profits from almost every single one of the co-promoted concerts. Plaintiff asserts that neither React nor SFX asked Doty to obtain the records. Plaintiff adds that neither React nor SFX had any knowledge of ETE's underreporting of revenue, and neither party was contemplating litigation against ETE prior to receiving the records.

According to React, it was paid approximately $82,400.00 less than what it should have received under the co-promotion agreement. React further alleges that Defendants' scheme resulted in a $400,000.00 reduction in React's "Earn-Out Payment" (a multiplier on profits) under an Asset Membership Interest and Contribution Agreement between SFX Entertainment, Inc. and SFX-React Operating LLC (the terms of which Defendants were allegedly aware) when SFX acquired React assets in 2014.

According to SFX, it was paid approximately $126,200.00 less than what it should have received under the terms of the co-promotion agreement. SFX further

7

alleges that Eagle has withheld payments totaling approximately $200,000.00 for at least 16 concerts that SFX and Defendants have co-promoted since March 2016.

In February 2016, a representative of Plaintiff called the owner of ETE, McGowan, and told him that React and SFX had copies of ETE's records. (Doc # 28-1; Doc # 31-1) In March 2016, McGowan met with the principals of React and SFX to discuss the records in Plaintiff's possession. *Id.* In June 2016, React and SFX sent a letter to Defendants requesting payment, in an attempt to settle the dispute pre-litigation. Later, ETE's counsel sent a letter claiming that the records were stolen and demanding that they be returned. On July 1, 2016, React and SFX purported to return a complete copy of the allegedly stolen records, and offered to destroy the documents if Defendants provided an affidavit confirming that the records provided were the property of ETE. (Doc # 33-1; Doc # 36-1) Defendants never responded to the July 1 letter.

In September 2016, React and SFX brought actions against Defendants alleging that they suffered hundreds of thousands of dollars in damages because, as a result of Defendants systematic and fraudulent underreporting, React and SFX almost always received less from the concerts than the 50 percent of the profits to which they were entitled under the co-promotion agreements.

On August 11, 2017, after filing its Response to Defendants' Motion for Discovery Sanctions (Doc # 28; Doc # 31), but within the period set for factual discovery (*see* Doc # 12; Doc # 17), counsel for Plaintiff wrote a letter to Defendants disclosing that the files returned to Defendants on July 1, 2016 were not a complete copy of the allegedly stolen records. (Doc # 33-1; Doc # 36-1) The files sent on July 1, 2016 were a complete copy of the records related to events co-promoted by ETE and React or SFX that were in Plaintiff's possession. *Id.* According to Plaintiff's counsel, Defendants were sent a partial copy of the records because of Plaintiff's mistaken belief that the other files were irrelevant to the current litigation. *Id.* During April 2017, three months after the schedule for discovery was set (*see* Doc # 12; Doc # 17), Plaintiff sent its counsel the complete collection of the records received from Doty as part of the collection materials for discovery. (Doc # 33-1; Doc # 36-1) Those records included information regarding events that did not involve React or SFX. *Id.* Plaintiff's counsel claims to have not discovered this error until it began preparing a Rule 216 request for admission. *Id.* A complete copy of all of the ETE records Plaintiff received from Doty was sent to Defendants with the letter on August 11, 2017. *Id.* Plaintiff's counsel indicated that they have no intention of using the records that are not related to events co-promoted by ETE and Plaintiff. *Id.*

Defendants allege Plaintiff used stolen records as the basis to file its complaint and request the Court use its inherent authority to dismiss Plaintiff's claims with prejudice as a discovery sanction. Defendants argue that dismissal is the only appropriate sanction given Plaintiff's pre-litigation conduct. Defendants add that Plaintiff's subsequent failure to return all of the ETE records in its possession supports dismissal. (S*ee* Defendants' Reply, Doc # 33; Doc # 36)

## II.    ANALYSIS

### A. Motion Requesting Dismissal as a Discovery Sanction Against React

District courts have inherent authority to dismiss a case when parties act in bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("Outright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion.") (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980)). The authority is pursuant to courts' "equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). This inherent power is punitive, and can be used to sanction both attorneys and parties. *Stalley v. Methodist Healthcare*, 517 F.3d 911, 920 (6th Cir. 2008).

A Court may invoke its inherent authority "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (quoting *Chambers*, 501 U.S. at 45-46). A bad faith determination requires a district court to find that (1) the position advanced or maintained by a party was meritless, (2) the party knew or should have known that the position was meritless, and (3) the position was advanced or maintained for an improper purpose. *United States v. Llanez-Garcia*, 735 F.3d 483, 492 (6th Cir. 2013). A court must find something more than that a party knowingly pursued meritless claims during the proceedings. *Id.* Sanctions are not granted based "solely on pre-litigation conduct giving rise to the claim," however, improper pre-litigation conduct which creates the cause of action *and* improper conduct after the start of the litigation may be considered sanctionable bad faith. *Griffin Indus., Inc. v. U.S. E.P.A.*, 640 F.3d 682, 685 (6th Cir. 2011) (citing *Shiffman v. Int'l Union of Operating Eng'rs*, 744 F.2d 1226, 1233 (6th Cir. 1984) (en banc)).

Dismissal is a discovery sanction of last resort. *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154 (6th Cir. 1988). Dismissal should only be imposed if a court finds that a party's misconduct is due to willfulness, bad faith, or fault. *Id.* at 153-154. A court should consider: (1) whether the opposing

party was prejudiced by the failure to cooperate; (2) whether the party to be sanctioned was warned that failure to cooperate could lead to dismissal; and (3) whether less severe sanctions can be imposed or considered before dismissal. *Id.* at 155.

### 1. Discovery Sanctions

Defendants' request for dismissal falls outside the scope of Fed. R. Civ. P. 37 because it involves pre-litigation conduct and is not a failure to make disclosures or to cooperate in discovery. Although Plaintiff did not disclose the complete collection of ETE records in Plaintiff's possession with the July 1, 2016 letter, that disclosure was pre-litigation. While it can be argued that the timing of this admission by Plaintiff's counsel taints the strength of Plaintiff's position, there has not been a discovery violation because the complete ETE records were sent to Defendants within the period set for factual discovery.

The Court may still use its inherent authority to dismiss Plaintiff's claims for the alleged discovery-related violations. *See Chambers*, 501 U.S. at 50 (explaining that a federal court may resort to its inherent authority to impose a sanction for bad faith conduct). A federal court must make a finding of bad faith to invoke its inherent authority. *Id.*

### 2. Bad Faith

Defendants argue that Plaintiff's claims should be dismissed because Plaintiff used records stolen from ETE as the basis for this action. Defendants argue that Plaintiff's bad faith conduct included committing a felony under Michigan Compiled Laws ("MCL") section 750.535 (receipt of stolen property), and altering the metadata from the files returned to ETE. Defendants add that Plaintiff's failure to disclose the complete collection of ETE records within its possession until ordered by the Court supports dismissal.

Plaintiff argues that its pre-litigation conduct does not warrant sanctions of any kind, and Defendants have based their bad faith theory on a case that is non-controlling, unpersuasive, and distinguishable from the facts of this case. Plaintiff adds that Defendants' assertions that Plaintiff committed a felony and intentionally altered metadata from files, are disingenuous and unsupported.

Defendants primarily rely on one case to advance their bad faith argument—*Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273 (D. Utah 2016).[1] In *Xyngular*, the district court exercised its inherent powers to dismiss the defendant's counter-claims because of his bad faith pre-litigation misconduct. *Id.* at 1328. The defendant was a minority shareholder of the plaintiff corporation, and used another minority shareholder to collect confidential files of the corporation for over a year, in anticipation of a litigation he intended to initiate against the corporation. *Id.* at

---

[1] This case is currently on appeal in the 10th Circuit. (*see* Doc # 28-2; Doc # 31-2)

1312-13. The documents belonged to the corporation, and companies serviced by the corporation. The defendant hid the fact that he had the documents in his possession until he attached several of the documents to responsive pleadings during the litigation. *Id.* at 1313.

Defendants have failed to provide case law and facts to support its bad faith theory. The Court finds that Plaintiff's pre-litigation conduct did not rise to the level of bad faith.

First, there are at least four critical differences between the facts of the present case and *Xyngular*. Unlike the situation in *Xyngular*: (i) there has been no evidence presented to establish that Plaintiff actively conspired to steal or solicit the ETE records, and Defendants have not made that argument; (ii) neither Plaintiff nor Defendants have provided evidence that Plaintiff obtained the records with the intent to file a lawsuit against Defendants; (iii) the records in question are the sole property of ETE; and (iv) Plaintiff did not hide the fact that it possesses ETE's records, and disclosed its possession before bringing this litigation. Defendants do not argue that Plaintiff obtained the records prior to litigation to gain an unfair advantage or to circumvent the discovery process. Defendants argue that Plaintiff's possession of the records prior to commencement of the litigation is bad faith and warrants dismissal. The *Xyngular* case is unpersuasive.

Second, Defendants' position that Plaintiff's receipt of the records was felonious is unsupported. Michigan Compiled Laws section 752.535(1) states that "a person shall not . . . possess . . . property knowing, or having reason to know or reason to believe, that the . . . property is stolen." Defendants have not provided sufficient evidence (at this time) to establish that the records were stolen,[2] or that Plaintiff had reason to know or believe that the records were stolen. The monetary value of the records is also a critical factor. Section 750.535(2)-(6) provides the requirements for felonies and misdemeanors under the law. Generally, if the value of the property is less than $1,000, the violation is a misdemeanor. MCL 750.535(4). The value of stolen items is determined by the price "the item will bring on the open market." *People v. Pratt*, 254 Mich. App. 425, 429 (2002); *People v. Dandy*, 99 Mich. App. 166, 173 (1980), *rev'd on other grounds*, 410 Mich. 901 (1981). Whether the records at issue have a monetary value over $1,000, if any value at all, is not supported by Defendants. Defendants' assertion that the altered metadata on the files returned to ETE is evidence of Plaintiff's felonious misconduct is unsupported. There is no evidence on the record that Plaintiff violated MCL 750.535.

---

[2] The only evidence presented to establish that the records were stolen is the affidavit of Defendant McGowan. (Doc # 26-1; Doc # 29-1) McGowan stated that Doty "illegally hacked" ETE's servers, but does not provide further evidence of how McGowan arrived at that conclusion. *Id.* Defendants' motion also acknowledges that the files returned to ETE did not include information to identify the person who accessed the records. (*Id.*, Pg ID 6)

Third, Defendants' bad faith theory is based entirely on conduct that took place *prior* to the litigation. Sixth Circuit case law is clear: sanctions are not granted based "solely on pre-litigation conduct giving rise to the claim." *Griffin Indus.*, 640 F.3d at 685 (6th Cir. 2011) (denying an award of attorney fees based on pre-litigation misconduct). However, sanctions can be imposed for improper pre-litigation conduct which creates the cause of action, *and* improper conduct *after the start* of the litigation. *Id.* (citing *Shiffman*, 744 F.2d at 1233). Defendants have not accused Plaintiff of any misconduct after this litigation was commenced. Full disclosure of all of the ETE records Plaintiff has in its possession did not change the essence of Defendants' motion before the Court: Defendants request that the Court use its inherent authority to dismiss Plaintiff's claims. (*see* Defendants' Reply, Doc # 33; Doc # 36) The Court notes that Defendants also failed to address any of the bad faith factors established by the law of the Sixth Circuit.

### 3. Dismissal

The Court finds that Defendants have not demonstrated that Plaintiff's conduct was not done in bad faith, which is required to impose sanctions under the Court's inherent authority. *First Bank of Marietta*, 307 F.3d at 517 ("[T]he imposition of inherent power sanctions requires a finding of bad faith."). The Court need not address additional dismissal factors in the absence of bad faith. The Court, however, notes that Plaintiff has not been warned that sanctions might

be imposed and less severe sanctions have not been considered or requested. Defendants' Motion requesting dismissal of Plaintiff React's claims is denied with prejudice.

A. Motion Requesting Dismissal as a Discovery Sanction Against SFX

Defendants and Plaintiff SFX rely on the same arguments, supporting facts, and case law regarding Defendants' Motion to have Plaintiff SFX's claims dismissed. Defendants' Motion is denied with prejudice.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' Motion for Sanctions (Case No. 16-13288, Doc # 26) against Plaintiff React is DENIED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Motion for Sanctions (Case No. 16-13311, Doc # 29) against Plaintiff SFX is DENIED WITH PREJUDICE.

IT IS ORDERED.

s/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 29, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 29, 2018, by electronic and/or ordinary mail.

                         S/LaShawn R. Saulsberry
                         Case Manager